UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
UNITED STATES OF AMERICA,        :
        :
      v.        :      **MEMORANDUM & ORDER**
        :      22-CR-143 (WFK)
SETH GOLDING,        :
        :
        Defendant.      :
-------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On May 6, 2022, Defendant Seth Golding ("Defendant") waived indictment and pled guilty to the sole count of an Information, charging Defendant with conspiracy to commit access device fraud, in violation of 18 U.S.C. §§ 1029(a)(2), (a)(5), and (b)(2). The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is hereby sentenced to 57 months of incarceration, to be followed by two years of supervised release with special conditions, restitution in accordance with the Order of Restitution, forfeiture in accordance with the Order of Forfeiture, and a $100.00 mandatory special assessment.

## BACKGROUND

The instant offense was uncovered through a joint investigation by the United States Postal Inspection Service and the Department of Labor, Office of Inspector General into fraudulent unemployment benefits claims submitted to the New York State Department of Labor ("NYSDOL"). Presentence Investigation Report ("PSR") ¶ 9, ECF No. 102.

In March 2020, the President of the United States signed into law various acts for the purpose of providing financial assistance to individuals affected by the onset of the COVID-19 pandemic. *Id.* ¶¶ 11-15. Included among these legal measures were the Families First Coronavirus Response Act, which provided flexibility for state unemployment insurance ("UI") agencies and administrative funding to respond to COVID-19; and the Coronavirus Aid, Relief, and Economic Security Act ("CARES" Act), which expanded the ability of states to provide UI for workers impacted by COVID-19. *Id.* ¶¶ 12-13. The CARES Act also created new UI programs, including

the Pandemic Unemployment Assistance ("PUA") program and the Federal Pandemic Unemployment Compensation ("FPUC") program. *Id.* ¶ 13. As the pandemic raged on, the President continued to authorize additional funding intended to alleviate Americans' pandemic-related financial hardship. *See id.* ¶¶ 16-17.

The NYSDOL operates New York's unemployment system and distributes UI benefits therein. *Id.* ¶ 10. It does so through primarily through the New York State Unemployment Insurance Fund ("NYSUIF"). *Id.* During the period covering the instant offense, the two primary methods for filing for NYSUIF benefits were (1) online through the NYSDOL website and (2) by telephone through a NYSDOL call center. *Id.* ¶ 18. Individuals obtained their NYSUIF benefits in a number of ways. *Id.* ¶ 19. Some claimants were issued KeyBank National Association ("KeyBank") debit cards to which NYSUIF benefits were credited. *Id.* Other claimants acquired reloadable cards issued by different banks and, after inputting their reloadable cards' information to the NYSDOL online portal, had those cards funded with NYSUIF benefits. *Id.* Other claimants, meanwhile, had NYSDOL deposit their NYSUIF benefits directly into personal bank accounts. *Id.*

Between June 2020 and April 2021, Defendant and his co-conspirators submitted and caused to be submitted approximately 250 fraudulent UI claims to NYSDOL using the personal identifying information ("PII") of real individuals ("the victims"). *Id.* ¶¶ 21-22. Defendant and his co-conspirators obtained the victims' PII by, *inter alia*, using Bitcoin to purchase it from individuals via Telegram, an encrypted messaging application. *Id.* ¶ 23; *see also* Government Sentencing Memorandum ("Gov't Mem.") at 8, ECF No. 113.

Once Defendant and his co-conspirators purchased their victims' PII using cryptocurrency funds and submitted the fraudulent claims, they obtained NYSUIF benefits on KeyBank debit cards. *Id.* ¶ 25; *see also id.* (explaining three of Defendant's co-defendants had the NYSUIF benefits deposited directly into co-conspirators' bank accounts). Defendant and his co-conspirators went to banks, often together, to withdraw cash using those KeyBank debit cards; indeed, the PSR details two instances where Defendant, accompanied by co-conspirators, attempted to withdraw money from KeyBank debit cards at various banks. *Id.* ¶¶ 30, 31. During the timeframe of the instant offense, Defendant and his co-defendants took and posted pictures of themselves with and fanning out large quantities of cash, in designer clothes and accessories, and with luxury cars. *Id.* ¶ 33; *see also id.* ¶¶ 34-40; Gov't Mem. at 3.

Altogether, Defendant and his co-conspirators received more than $1,750,000.00 as a result of their fraudulent scheme. *Id.* ¶ 22. However, if NYSDOL had not detected their scheme before issuing additional payments on pending claims, this figure would have been more than $8,800,000.00. *Id.* Defendant himself submitted and caused to be submitted at least 20 fraudulent claims in the victims' names, yielding more than $160,090.00. *Id.* ¶ 47; *see also* Order of Forfeiture, ECF No. 116 (ordering forfeiture of $163,090.00, which Defendant received in relation to the instant offense). The PSR and the Government's Sentencing Memorandum both discuss Defendant's involvement in other fraudulent schemes not covered by the instant offense, including: (1) fraudulent Paycheck Protection Program ("PPP") claims, and (2) illegally selling iPhones. *See* PSR ¶¶ 52, 54, 57; Gov't Mem. at 2 n.2.

On May 14, 2021, the Government filed a then-sealed Complaint alleging between June 2020 and April 2021, Defendant and others fraudulently filed unemployment insurance claims

using the PII of third-party victims, and fraudulently received UI benefits funded, in whole or in part, by COVID-19 pandemic assistance programs. Compl., ECF No. 1.

On May 6, 2022, Defendant waived indictment and pled guilty to the sole count of the Information, charging Defendant with conspiracy to commit access device fraud, in violation of 18 U.S.C. §§ 1029(a)(2), (a)(5), and (b)(2).

## Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

### A.   The Nature and Circumstances of the Offense and the History and Characteristics of Defendant

### 1.    **Family and Personal Background**

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Defendant was born on December 24, 2002 in Queens, New York to Gilroy Golding and Niki Singh.  PSR ¶ 83.  Defendant's parents are both aware of the instant offense and remain supportive.  *Id.*  Defendant has three maternal half-siblings, the two eldest of whom are aware of the instant offense and remain supportive.  *Id.* ¶ 84.

Defendant was primarily raised by his father in a middle-income income, multigenerational home in Brooklyn.  *Id.* ¶ 85, 86.  While Defendant did not live with his mother, he saw her weekly and reported a positive relationship with his stepfather.  *Id.* ¶ 85.  Defendant reported favorably on his childhood, which was loving and free from abuse.  *Id.*

Defendant has never been married and has no children.  *Id.* ¶ 87.

### 2.    **Educational and Employment History**

Defendant reported graduating from Victory Collegiate High School in 2020.  *Id.* ¶ 53.[1] In 2020, Defendant reportedly studied business management for one semester at Medgar Evers College in Brooklyn, New York.  *Id.* ¶ 96.  In June 2022, Defendant completed a carpentry course at the School for Cooperative Technical Education in New York, New York.  *Id.* ¶ 95.

Between June 2021 and November 2022, Defendant worked at his stepfather's Brooklyn car detailing shop; as a dishwasher and at the grill in a Brooklyn Wendy's; in the meat department at a Brooklyn BJ's Wholesale Club; and cleaning floors at a Brooklyn Feel Beauty location.  *Id.* ¶¶ 98-101.

---

[1] The PSR is misnumbered:  this paragraph 53 is located between paragraphs 96 and 97 on page 17.

3.    **Prior Convictions**

Defendant has one prior conviction for Criminal Possession of a Weapon in the Fourth Degree.  Second PSR Addendum at 2, ECF No. 112.  Defendant committed that offense while under Pretrial Services supervision for the instant offense.  *See id.*; PSR ¶ 7.

4.    **Medical and Mental Health**

Defendant reported no history of chronic or serious physical health problems.  PSR ¶ 90. Defendant reported occasional anxiety and prior depressive thoughts.  *Id.* ¶ 92.

5.    **Substance Abuse**

Defendant reported marijuana use from 8th grade until his arrest for the instant offense.  *Id.* ¶ 93.  While on Pretrial Services supervision for the instant offense, Defendant twice tested positive for marijuana.  *Id.*  Defendant did not report any other drug or alcohol use.

6.    **Nature and Circumstances of the Offense**

The Court's previous statements make clear the nature and circumstances surrounding the instant offense.  *See supra* at Section I.

B.    **The Need for the Sentence Imposed**

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  18 U.S.C. § 3553(a)(2).

This offense was undoubtedly serious.  As the Government put it:

6

> The defendant and his co-conspirators took advantage of a global pandemic—a time of tremendous suffering—to profit through an elaborate criminal scheme. The defendant and his co-conspirators used cryptocurrency to unlawfully purchase the PII of real victims on encrypted applications like Telegram, and then used that information to fraudulently apply for unemployment benefits from NYSDOL. In total, the defendant and his co-conspirators submitted fraudulent claims in the names of approximately 250 real victims, for which they received in excess of $1,750,000.

Gov't Mem. at 8. The Court's sentence will deter others from engaging in similar acts and justly punishes Defendant for his crimes.

### C.    The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3). Defendant pled guilty to the sole count of an Information, charging him with conspiracy to commit access device fraud, in violation of 18 U.S.C. §§ 1029(a)(2), (a)(5), and (b)(2). As part of his Plea Agreement, Defendant agreed not to file an appeal or otherwise challenge his sentence if the Court imposes a term of imprisonment of 57 months or below. Plea Agreement ¶ 4, ECF No. 90.

Defendant faces a statutory maximum term of imprisonment of seven and one-half years and no minimum term of imprisonment. 18 U.S.C. §§ 1029(b)(2) and 1029(c)(l)(A)(ii). Defendant also faces a statutory maximum term of supervised release of three years and no minimum term of supervised release. 18 U.S.C. § 3583(b). If Defendant violates a condition of release, Defendant may be sentenced to up to two years without credit for pre-release imprisonment or time previously served on post-release supervision. 18 U.S.C. § 3583(e). Defendant is also eligible for not less than one nor more than five years of probation, and, barring extraordinary circumstances, the Court must impose a fine, restitution, or community service as a condition of probation. 18 U.S.C. §§ 3561(c)(1) and 3563(a)(2). Defendant faces a maximum fine of $250,000.00. 18 U.S.C. §

3571(b).  However, Probation notes Defendant appears unable to pay a fine based on his financial profile and the priority of restitution.  PSR ¶¶ 103-04.

The Court is also required to impose a mandatory special assessment of $100.00 per count. 18 U.S.C. § 3013.  Restitution in the full amount of each victim's losses as determined by the Court is mandatory in this case pursuant to 18 U.S.C. §§ 3663A and 3664.  Per the Order of Restitution, Defendant is subject to restitution in the amount of $163,090.00.  ECF No. 117. Defendant is further subject to a forfeiture money judgment of $163,090.00, as agreed to in his Plea Agreement and required by the Order of Forfeiture.  Plea Agreement ¶¶ 6-13; Order of Forfeiture.

### D.   The Kind of Sentences and the Sentencing Range Established for Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines."  18 U.S.C. § 3553(a)(4)(A).

Probation asserts that the applicable Guideline for conspiracy to commit access device fraud, in violation of 18 U.S.C. §§ 1029(a)(2), (a)(5), and (b)(2), is U.S.S.G. §2B1.1, which provides a base offense level of six.  PSR ¶ 64.  Defendant is responsible for an intended loss amount of more than $1.5 million, resulting in a 16-level increase pursuant to U.S.S.G. §2B1.1(b)(1)(I).  Second PSR Addendum at 1.  Two levels are added pursuant to U.S.S.G §2B1.1(b)(2)(A) because the offense involved more than 10 victims.  *See* PSR ¶ 66.  A further two levels are added pursuant to U.S.S.G. §2B1.1(b)(11)(C)(i) because the offense involved the unauthorized transfer or use of identification unlawfully to produce or obtain means of identification.  PSR ¶ 67.  Two more levels are added under U.S.S.G. §2B1.1(b)(12) because the offense involved conduct described in 18 U.S.C. § 1040, which prohibits fraud in connection

8

with major disaster or emergency benefits. *See* PSR ¶ 68. Altogether, Probation calculates that Defendant's total adjusted offense level is 28. Second PSR Addendum at 1.

The Government agrees with Probation's calculations, but notes the loss amount of more than $1.5 million is predicated on the *actual* rather than *intended* loss amount. *See* Gov't Mem. at 5. However, the Government argues, and the Plea Agreement reflects, Defendant should receive a further one-level reduction pursuant to U.S.S.G. Policy Statement 5K2.0 because there was a global resolution to the case. *See id.*; Plea Agreement ¶ 2. Under the Government's Guidelines calculations, Defendant has a total adjusted offense level of 27. Gov't Mem. at 5.

Defense counsel disagrees with both Probation's and the Government's Guidelines calculations, instead arguing the stipulated Guidelines calculations in the Plea Agreement, yielding a total offense level of 22, should govern. Defense Sentencing Memorandum ("Def. Mem.") at 2-3, ECF No. 111; *see also* Defense Objections to the PSR, ECF No. 103. The Plea Agreement Guidelines calculations include: (1) a three-level reduction for timely acceptance of responsibility; (2) a 14 rather than 16 level enhancement for the loss caused by Defendant, predicated on an intended loss of more than $550,000.00 rather than the actual loss of more than $1.5 million caused by Defendant and his co-conspirators; and (3) a one-level reduction for a global resolution. *Id.* at 2-3, 4-5; *see also* Plea Agreement ¶ 2.

Alternatively, defense counsel "implores the Court" to consider a Guidelines calculation that would consider Defendant a Zero-Point Offender, and that would not consider an intended loss amount, but rather the actual loss amount attributable to Defendant. Def. Mem. at 6-8. This, coupled with the three-level reduction defense counsel asks this Court to adopt, would result in a total adjusted offense level of 16. *Id.* at 8.

Probation and the Government argue Defendant is not entitled to the three-level reduction for timely acceptance of responsibility referenced in the Plea Agreement because of Defendant's continued criminal conduct while out on bond.  First PSR Addendum at 1, ECF No. 104; Gov't Mem. at 6-7; *see also* Plea Agreement ¶ 2 ("If the defendant clearly demonstrates acceptance of responsibility, through allocation and subsequent conduct prior to the imposition of sentence, a two-level reduction will be warranted[.] . . . Furthermore, if the defendant has accepted responsibility as described above, to the satisfaction of the Office, and if the defendant pleads guilty on or before May 31, 2022 an additional one-level reduction will be warranted.").  The Government asserts "[w]hile on supervised release and participating in the [Special Options Services ("SOS")] Program, the defendant was found in a car with a defaced, loaded firearm; $3,500.00 in unexplained cash on his person; and a U.S. Treasury Check in a third party's name secreted between his buttocks—which he kept hidden even after his state arrest and arraignment."  Gov't Mem. at 6; *see also id.* at 4 (noting the third-party payee "reported not knowing" Defendant, despite Defendant telling Pretrial Services "the check belonged to his cousin and that he was authorized to have it"); *see generally* Violation of Supervised Release Memorandum, ECF No. 99.  As such, the Government maintains Defendant "[p]lainly . . . continued to engage in criminal schemes involving fraudulently obtained funds in the names of third parties, and is thus ineligible for the reduction."  Gov't Mem. at 6.

Defense counsel disagrees.  While acknowledging Defendant's post-plea criminal conduct can be properly considered in determining whether Defendant is eligible for the acceptance of responsibility reduction, defense counsel notes "it is within the Court's discretion to determine the impact, if any, of the post-plea conduct in setting a defendant's sentence."  Def. Mem. at 3.  As such, defense counsel argues Defendant's "nineteen (19) months of participation

10

in S.O.S, and compliance with the [Pretrial Services] conditions, including long-term compliance with the condition that he seek verifiable employment and/or participate in educational program, conditions which were never alleged to have been violated by [Pretrial Services] were more reflective of the sincerity of his acceptance." *Id.* The Court agrees with Probation and the Government: Defendant's objective post-plea conduct, specifically being found with a hidden check made out to a third-party individual as detailed in the Violation of Conditions of Release Memorandum at ECF No. 99, is inconsistent with Defendant accepting responsibility for his offense. *See United States v. Guzman*, 282 F.3d 177, 185 (2d Cir. 2002) (upholding denial of acceptance of responsibility credit where "[t]he strong inference to be drawn from [the defendant's] post-plea [conduct] is that he was continuing to engage in the very criminal activity that led to the charges against him and to his guilty plea in those charges"). Therefore, notwithstanding Defendant's guilty plea, the Court exercises its discretion to find Defendant ineligible for the three-level reduction for acceptance of responsibility.

The Government argues utilizing an actual loss amount of more than $1.5 million, which "account[s] for the fact that the actual loss on the claims attributable to the defendant and his co-defendants, and which was reasonably foreseeable to the defendant," is the appropriate measure of loss in this case. Gov't Mem. at 5 (citing U.S.S.G. §§2B1.1(b)(1)(I) and 1B1.3(a)(1)); *see also* Application Note 3(A) to U.S.S.G. §1B1.3(a)(1) ("In the case of a jointly undertaken criminal activity, subsection (a)(1)(B) provides that a defendant is accountable for the conduct (acts and omissions) of others that was: (i) within the scope of the jointly undertaken criminal activity; (ii) in furtherance of that criminal activity; and (iii) reasonably foreseeable in connection with that activity."). Probation agrees with the Government's position. *See* Second PSR Addendum at 1 (updating the PSR, in response to a Government's objection, to reflect an

11

intended loss amount of $1,788.429.00). The Court agrees with the Government:  the actual loss

amount of more than $1.5 million is the appropriate measure of loss in this case.  The more than

$1.5 million in unemployment benefits obtained by Defendant and his co-defendants was within

the scope of the jointly undertaken criminal scheme to fraudulently submit claims for

unemployment benefits utilizing third parties' PII.  The actual loss associated with those

fraudulent claims was reasonably foreseeable to Defendant.  *See, e.g.*, Application Note 4(C)(ii)

to U.S.S.G. §1B1.3.

      The PSR reflects a criminal history score of zero and a criminal history category of I.

PSR ¶¶ 77-78.  However, as the second addendum to the PSR explains, Defendant has recently

been convicted and sentenced for a criminal offense committed after he pled guilty to the instant

offense in this case, meaning Defendant's criminal history score is now one.  Second PSR

Addendum at 2.  Defense counsel argues the Court should consider Defendant's criminal history

score at the time of his plea agreement, as opposed to at the time of sentencing.  *See* Def. Mem.

at 6.  This is significant because, as noted above, defense counsel suggests Defendant may be

eligible for a Zero-Point Offender reduction, which would not apply if the Court considered the

recent conviction.  Def. Mem. at 5-6.  The Government objects to defense counsel's approach,

noting the Guidelines define "prior sentence" for criminal history purposes as "a sentence

imposed prior to sentencing on the instant offense."  Gov't Mem. at 7 (quoting Application Note

1 to U.S.S.G. §4A1.2).  The Government is correct.  *See* Application Note 1 to U.S.S.G. §4A1.2

("A sentence imposed after the defendant's commencement of the instant offense, but prior to

sentencing on the instant offense, is a prior sentence if it was for conduct other than the conduct

that was part of the instant offense.").  Therefore, Defendant's prior criminal conviction counts

towards his criminal history score, yielding a criminal history score of one and making him

ineligible for the Zero-Point Offender reduction.  According to the sentencing table in U.S.S.G.

Chapter 5, Part A, a criminal history score of one establishes a criminal history category of I.

According to Probation's calculations, the Guidelines imprisonment range is 78 to 97

months of imprisonment.  Second PSR Addendum at 2.  According to the Government, the

Guidelines imprisonment range is 70 to 87 months of imprisonment.  Gov't Mem. at 7.

According to defense counsel's calculations predicated on a total offense level of 22, the

Guidelines imprisonment range is 41 to 51 months of imprisonment.  Def. Mem. at 3.  According

to defense counsel's alternative calculations predicated on a total offense level of 16, the

Guidelines imprisonment range is 21 to 27 months of imprisonment.  The Court adopts the

position of the Government.

The parties' sentencing recommendations vary.  Probation recommends a below-

Guidelines sentence of 60 months of custody; two years of supervised release with special

conditions; and the $100.00 special assessment.  Probation Recommendation at 1-2, ECF No.

102-1.  In recommending this sentence, Probation emphasizes:  the seriousness of Defendant

defrauding a pandemic-relief government program; Defendant's actions on pretrial release,

including his engagement in serious criminal conduct and illegal drug use; and his self-imposed

failure to complete the SOS Program.  *Id.* at 3.

Defense counsel recommends a below-Guidelines sentence of time served and supervised

release.  Def. Mem. at 1.  In addition to the aforementioned arguments, defense counsel asserts

the following should lead the Court to a below-Guidelines sentence of time served with

supervised release:  (1) Defendant was only 19-years-old at the time of the offense; (2)

Defendant submitted the fewest fraudulent claims, yielding the second lowest actual loss; (3)

Defendant's promising participation in the SOS Program; (4) Defendant's understanding of the

13

offense's seriousness and early acceptance of responsibility for the offense—he was the first

defendant to plead guilty; and (5) the harsh conditions of confinement at the Metropolitan

Detention Center. *Id.* at 8-11. Defense counsel rejects that a sentence of incarceration would

serve the goals of either specific or general deterrence, maintaining Defendant's pretrial

incarceration has "chastened" Defendant and a longer sentence will not effectuate the goals of

specific deterrence. *Id.* at 11.

The Court has read and considered the letters written and statements made at sentencing

by Defendant's loved ones and supporters. These letters describe Defendant as a smart and kind

young man who is remorseful for his poor decisions, and request leniency from the Court. ECF

No. 111-3. The Court appreciates what Defendant's advocates have said on his behalf, which

reinforce defense counsel's argument that Defendant's strong community support and

resources—including the job offer included in one letter, *id.* at 14—will mitigate Defendant's

risk of reoffending. Def. Mem. at 11-12.

The Government recommends a below-Guidelines sentence of 57 months to 71 months of

imprisonment. Gov't Mem. at 5. The Government emphasizes the seriousness of the instant

offense combined with Defendant's "flaunt[ing of] his ill-gotten gains on social media" as

warranting incarceration. Gov't Mem. at 8-9. The Government asserts a Guidelines sentence is

necessary to effectuate both specific and general deterrence, specifically invoking Defendant's

demonstrated "disregard for court orders and continued criminality" while on supervised release,

the harms wrought by Defendant and his co-conspirators in taking advantage of Government

programs, and the difficulty in detecting and investigating these types of financial crimes. *Id.* at

9. While the Government acknowledges Defendant's youth at the time of the offense, harsh

conditions of confinement, limited criminal history, and SOS Program participation, it ultimately

14

concludes that "a balance of the Section 3553(a) factors" weighs in favor of a below-Guidelines 57 to 71 month sentence. *Id.* at 9.

### E.       Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

The parties have pointed the Court to the policy statement at U.S.S.G. §5K2.0 governing the global resolution reduction. The PSR further notes Defendant's uncharged conduct related to PPP loans and illegal iPhone sales could warrant an upward departure under U.S.S.G. §5K2.21 (Policy Statement). PSR ¶ 120. The parties have not pointed the Court to any other pertinent policy statements, and the Court has not found any on its own.

### F.       The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires this Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

The Court premises its sentence on the nature and characteristics of this Defendant and of the instant crime of conviction. It has carefully considered the purpose of the applicable Guidelines provisions and has adequately ensured the sentence it now imposes will avoid unwarranted sentence disparities. The Court further considers defense counsel's statistical arguments regarding both Eastern District and Second Circuit FY 2022 sentencing patterns and the desire to avoid disparities between co-conspirator sentences. Def. Mem. at 12-13. The Government argues a sentence of 57 to 71 months would not yield any unwarranted sentencing disparities between Defendant and his co-conspirators. Gov't Mem. at 10.

### G.       The Need to Provide Restitution

Lastly, the seventh § 3553(a) factor requires this Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7).

Pursuant to 18 U.S.C. § 3663A and the Order of Restitution, restitution in the amount of $163,090.00 is ordered in this case. *See* ECF No. 117. The Court rejects defense counsel's argument that "restitution is not a component of the instant case" and defense counsel's request that, if the Court orders restitution, the Court "order that any payments be held in abeyance until at least thirty (30) days after his release, that interest not accrue while he remains incarcerated and that nominal payments be required for a period upon his release." Def. Mem. at 13.

## CONCLUSION

For the reasons set forth above, the Court determines a sentence of 57 months to be followed by two years of supervised release with both the standard conditions and special conditions, restitution in the amount of $163,090.00 pursuant to the Order of Restitution, forfeiture in the amount of $163,090.00 in accordance with the Order of Forfeiture, and a $100.00 mandatory special assessment is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2). The Court does not impose a fine because Defendant appears unable to pay.

The Court expressly adopts the factual findings of the Presentence Investigation Report and the addenda thereto, barring any errors contained therein, to the extent they are not inconsistent with this opinion.

SO ORDERED.

s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

16

Dated: May 13, 2024
   Brooklyn, New York